UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL GIZACHWE YIRGU,

              Plaintiff,

    v.

NANCY A. BERRYHILL,

              Defendant.

CASE NO. C17-555 RBL-BAT

**REPORT AND
RECOMMENDATION**

Michael Gizachwe Yirgu seeks review of denial of his Supplemental Security Income ("SSI") application. He contends the Administrative Law Judge ("ALJ") erred in evaluating the opinions of treating psychiatrist, David Rowlett, M.D., examining psychologist Wayne Dees, Psy.D., and reviewing psychologist John Gilbert, Ph.D. He further contends that remand for further proceedings is necessary to consider new evidence submitted to the Appeals Council which undermines the ALJ's mental residual functional capacity assessment. Dkt. 11. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Yirgu is 43 years old, completed the 11th grade, is able to read and write English "okay", and has never had a driver's license. Tr. 59-60. Mr. Yirgu grew up in Ethiopia and

Kenya during various civil wars and came to the United States when he was 14 or 15 and has been diagnosed with PTSD as a result. Tr. 56-57. He has worked as a metal sheet cutter, a seafood processor, and busboy. Tr. 60-62.

Mr. Yirgu filed his application for SSI disability benefits on April 2, 2014, alleging disability beginning January 1, 2008. Tr. 12. At the hearing, he amended his alleged onset date of April 2, 2014, the filing date of his application on the grounds that he cannot receive SSI benefits before that date. Tr. 55. On December 31, 2013, ALJ Gordon Griggs issued a decision finding Mr. Yirgu not disabled. Tr. 12-30. Mr. Yirgu requested review, which was denied by the Appeals Council on February 17, 2017. Tr. 1-5.

Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Yirgu's severe impairments included "alcohol dependence, cocaine dependence; depressive disorder; post-traumatic stress disorder; chronic obstructive pulmonary disease; sleep apnea; status post left leg degloving injury with skin grafting infections, and edema; and post-traumatic arthritis of the left wrist." Tr. 14. The ALJ found when his substance use was considered in combination with his other impairments, Mr. Yirgu was disabled because he had marked difficulties with social functioning and concentration, persistence, or pace but without consideration of substance use, Mr. Yirgu would have only mild difficulties in these same areas. Tr. 16, 19-20. The ALJ concluded Mr. Yirgu's substance use is a "contributing factor material to the determination of disability" because absent the substance use, Mr. Yirgu would not be disabled. Tr. 30.

The ALJ found further that absent consideration of substance use, Mr. Yirgu had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. 416.967(a), except that he can never climb ladders, ropes or scaffolds, but can frequently climb

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

ramps and stairs, and is further limited to frequent kneeling, crouching, crawling, handling, and fingering. Additional limitations include occasional exposure to extreme cold, vibration, and pulmonary irritants, such as dust, fumes, odors, gases, and poor ventilation. Finally, the ALJ found that even if Mr. Yirgu stopped the substance abuse, he would be limited to tasks that can be learned in 30 days or less, that involve no more than simple, work-related decisions and few workplace changes. Tr. 20-21.

Given these limitations, the ALJ found Mr. Yirgu was unable to perform his past relevant work, Tr. 28, but that considering his age (41-43) and education (limited); he was able to perform sedentary, unskilled work, including: (1) call-out operator (of which there are approximately 258,000 jobs nationally and 1,062 in Washington); (2) charge account clerk (of which there are approximately 200,150 such jobs nationally and 4,220 in Washington state); and, (3) table worker, of which there are approximately 100,300 such jobs nationally and 6,970 in Washington state). The ALJ found that these jobs existed in significant numbers in the national economy. Tr. 29.

## DISCUSSION

**A.      The ALJ Failed to Properly Consider Medical Opinions in Determining Plaintiff's Residual Functional Capacity**

An ALJ should generally give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Id.* at 830-31. Mr. Yirgu argues that although the ALJ considered the opinions of treating psychiatrist David Rowlett, M.D., examining psychologist

Wayne Dees, Psy.D., and reviewing psychologist John Gilbert, Ph.D., all of which were not contradicted, the ALJ failed to give clear and convincing reasons for rejecting them.

### 1.     David Rowlett, M.D.

Dr. Rowlett is Mr. Yirgu's treating psychiatrist at Community Psychiatric Clinic.  Mr. Yirgu has been a psychiatric patient at the clinic since 2008 and has been treated for major depressive disorder, PTSD, and alcohol and cocaine addiction.  The record contains monthly treatment notes from Dr. Rowlett beginning in February 2014.  Tr. 586.

In his September 2015 report, Dr. Rowlett opined Mr. Yirgu could not perform the following work functions on a regular, reliable or sustained basis:  (1) understand, remember and carry out detailed instructions; and (2) accept instructions and respond appropriately to criticism from supervisors.  Tr. 715-16.  He further opined Mr. Yirgu could perform the following tasks or functions, but would have noticeable difficulty (*i.e.*, be unproductive and distracted from job activity) more than 20 percent of the work day or work week (*i.e.*, more than one hour and up to two hours per day or one-half to one day per week) in: remembering locations and work-like procedures; understanding and remembering very short, simple instructions; maintaining attention and concentration for extended periods of time; performing activities within a schedule, maintain regular attendance, and/or being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychological based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to change in the work setting; being aware of normal hazards and take appropriate precautions; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others.  Tr. 715-16.  In support of

these limitations, Dr. Rowlett wrote:

> Mr. Yirgu has serious limitations caused by his persistent symptoms which would
> interfere with work.
> Mr. Yirgu's ability to maintain concentration and persist on even the simplest
> tasks is limited at this time.
> Mr. Yirgu's current condition, which he has maintained by limiting his activities
> and social interactions, would likely deteriorate if he were exposed to the routine
> stress involved in employment.
> Mr. Yirgu is treatment compliant and attends all of his appointments.

Tr. 717.

> The ALJ considered Dr. Rowlett's opinion as follows:

> I find that Dr. Rowlett's opinion relates to the claimant's ability to function in the
> context of substance abuse *given that the only diagnosed conditions that both he
> and the psychiatric clinic at which he practices treated the claimant for were
> alcohol and cocaine dependency* (see Exhibit B12F.1). Reading these two exhibits
> together *I can only conclude that Dr. Rowlett's opinion relates to the effect of
> alcohol and cocaine dependence on the claimant's functioning.* Although I note
> that Dr. Rowlett's opinion is somewhat internally inconsistent with his
> contemporaneous statement that the claimant attends all of his scheduled
> appointments (Exhibit 11F.3), I accord it some weight given that it is largely
> consistent with the evidence discussed above showing that, *with substance use*,
> the claimant has medically documented depressive syndrome characterized by
> sleep disturbance, decreased energy, feelings of guilt or worthlessness, and
> difficulty concentrating or thinking; medically documented findings of a
> persistent irrational fear of a specific object, activity, or situation which results in
> a compelling desire to avoid the dreaded object, activity, or situation; and marked
> difficulties in social functioning and concentration, persistence or pace.

Tr. 17 (emphases added).

A claimant may not be found disabled if alcoholism or drug addiction would be "a

contributing factor material to the Commissioner's determination" that the claimant is disabled.

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C),

1382c(a)(3)(J)).  Similarly, the Social Security Regulations require that the Commissioner

determine whether "drug addiction or alcoholism is a contributing factor material to the

determination of disability."  *Id*. (citing 20 C.F.R. [§ 404.1535(a)][,] [§ 416.935(a)]).

1    To determine whether a claimant's alcoholism or drug addiction is a materially

2    contributing factor, the ALJ first must conduct the five-step disability evaluation process

3    "without separating out the impact of alcoholism or drug addiction." *Id*. at 955. If the ALJ finds

4    the claimant is not disabled, "then the claimant is not entitled to benefits." *Id*. If the claimant is

5    found disabled "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" the

6    ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he] stopped using

7    alcohol or drugs.'" *Id*. (citing 20 C.F.R. [§ 404.1535][,] [§ 416.935]). Thus, if a claimant's

8    current limitations "would remain once he stopped using drugs and alcohol," and those

9    limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and

10   the claimant will be deemed disabled." *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

11   The ALJ based his conclusion – that Dr. Rowlett's opinion related only to the effect of

12   alcohol and cocaine dependence on Mr. Yirgu's functioning – on a letter dated September 11,

13   2015 from Community Psychiatric Clinic stating that Mr. Yirgu was admitted to the clinic's

14   SUDS/IOP group on January 27, 2015, with a diagnosis of alcohol and cocaine dependency. Tr.

15   719 (Exhibit B12F.1). The ALJ failed to consider however, that Dr. Rowlett had been treating

16   Mr. Yirgu for a major depressive disorder and PTSD well before admitting him to the SUDS/IOP

17   group in January 2015 (Tr. 586, 585, 584, 583, 700, 699, 697, 696, 958, 956, 954, 953, 952, 951)

18   or that Mr. Yirgu had been a psychiatric patient of the clinic since 2008. Contrary to the

19   Commissioner's statements, the ALJ clearly did not recognize that Dr. Rowlett's opinion

20   described limitations relating to conditions *other than* alcoholism and drug addiction. Instead,

21   the ALJ adopted Dr. Rowlett's opinion but found that Dr. Rowlett was describing limitations

22   stemming *solely* from alcoholism and drug addiction. The ALJ erred because as discussed

23

above, the record does not support such a narrow reading of Dr. Rowlett's opinion.[2]

Accordingly, the Court concludes substantial evidence does not support the ALJ's finding Dr. Rowlett's opinion related only to the effect of alcohol and cocaine dependence on Mr. Yirgu's functioning. The record shows otherwise and on remand, the ALJ must therefore reassess Dr. Rowlett's opinion.

### 2. *Wayne Dees, Psy.D.*

In connection with his application for benefits, Mr. Yirgu was examined by psychologist Wayne Dees, Psy.D. Tr. 17-18, *citing* Tr. 564-68. Mr. Yirgu's score on the Miller Forensic Assessment of Symptom Test (M-FAST) did not suggest malingering and Dr. Dees noted, "[h]is NI (negative image) score presents an overly negative view of oneself that is not common in general populations of psychiatric patients. It is thought that patients with severe depression may be more likely to endorse this item that other types of patients." Tr. 567. Dr. Dees found Mr. Yirgu to be significantly depressed with a blunted affect. Tr. 567. Mr. Yirgu reported feelings of guilt and worthlessness, and had problems with his memory and repeating serial 7's. Tr. 568. Dr. Dees found Mr. Yirgu was experiencing a depressed mood, anxiety, and symptoms of PTSD. Tr. 656. He diagnosed a major depressive disorder, recurrent, severe without psychosis; PTSD; and alcohol and cocaine dependence in early full remission. Tr. 565. Mr. Yirgu's GAF was 48. Tr. 566.

Dr. Dees concluded Mr. Yirgu is unable to maintain appropriate behavior in a work

---

[2] On September 8, 2016, Dr. Rowlett submitted a second statement to the Appeals Council. In this statement, Dr. Rowlett clarifies Mr. Yirgu's limitations (major depressive disorder and PTSD) absent the use of drugs or alcohol (*e.g.,* inability to understand and carry out even simple instructions or stay on task for two hour segments, and performing tasks approximately 20% slower than others.) Tr. 1044-1048. The significance of this second statement is discussed in more detail below.

setting or to complete a normal workday and workweek without interruptions from his psychologically based symptoms. The doctor found Mr. Yirgu would have very significant limitations in performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision, learning new tasks, adapting to changes in a routine work setting, and communicating and performing effectively in a work setting. Tr. 566. Dr. Dees also found Mr. Yirgu's impairments were not primarily the result of alcohol or drug use within the past 60 days and that the current impairments would persist even after 60 days of sobriety. Tr. 567.

The ALJ considered Dr. Dees's opinion as follows:

> Dr. Dees's indication that the claimant's impairments *are not primarily the result of alcohol or drug abuse within the past 60 days is unpersuasive given the claimant's contemporary report to medical personnel at his treating psychiatric clinic that his substance use had only decreased rather than stopping altogether* (Exhibit B6F.7). On the other hand, I accord great weight to the remainder of Dr. Dees's opinion and assigned GAF score *as to the claimant's functionality with substance abuse* given that they are largely consistent with the evidence discussed above showing that, with substance use, the claimant has medically documented depressive syndrome characterized by sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking; medically documented findings of a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; and marked difficulties in social functioning and concentration, persistence or pace.

Tr. 17-18 (emphases added).

The ALJ rejected Dr. Dees's opinion based on a statement by Mr. Yirgu's case manager in a December 30, 2014 Recovery Plan Review and Update from Community Psychiatric Clinic: "Clt. attends CD groups at Northgate and reports decreased [sic] in substance use." Tr. 588 (Exhibit B6F.7). The Commissioner argues the ALJ properly rejected Dr. Dees's opinion because his finding that Mr. Yirgu's substance use disorder was in early *full* remission, conflicted with other reports showing a decrease, rather than abatement of substance use. Dkt.

12, at 4. Mr. Yirgu counters that the Commissioner misunderstands what it means to be in "early full remission," and explains that, at the time of this evaluation, a designation of early full remission meant that no criteria for substance and dependence had been met for at least one month. Dkt. 13, at 5 (citing AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL, available at http://behavenet.com/criteria-early-full-remission-specifier). Thus, a designation of "early full remission" does not mean that there has been no use whatsoever.

An earlier Recovery Plan Review and Update document states Mr. Yirgu's last alcohol use was in March 2013 (Tr. 590) and he self-reported to Dr. Dees that he had not used alcohol over the past year, but had been using cocaine off and on (Tr. 565) – a fact known to and noted by Dr. Dees. Thus, the record shows Dr. Dees knew that Mr. Yirgu was still using drugs when he rendered his opinion. Accordingly, there is no basis to conclude, as the ALJ did, that the doctor's opinion was based on a finding Mr. Yirgu was not using alcohol or drugs at all. There is also no evidence that Mr. Yirgu was under the influence of alcohol or drugs at the time of Dr. Dees's examination. Rather, the record shows that Dr. Dee's opinion was based on his medical determination that Mr. Yirgu's limitations were not the *primary* result of drugs or alcohol. The Court therefore concludes that substantial evidence does not support the ALJ's rationale for rejecting Dr. Dee's opinion and that on remand the ALJ should reassess Dr. Dees's opinion.

   **1.   *John Gilbert, Ph.D.***

In July 2014, state agency psychological consultant John D. Gilbert, Ph.D., reviewed the medical evidence and concluded that Mr. Yirgu was moderately limited in his ability to maintain attention and concentration for prolonged periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace

without an unreasonable number and length of rest periods.  Tr. 127.  When asked to explain in narrative form the sustained concentration and persistence capacities and/or limitations, Dr. Gilbert wrote: "Claimant can carry out SRT and most CDT.  Claimant's sxs of depression and sleep issues related to nightmares *may* affect his CPP [concentration, pace, persistence] at times, although these are improved."  Tr. 127 (emphasis added).  This opinion was adopted by Dr. Covell in November 2014, who included the comment that Mr. Yirgu can "maintain concentration for up to two hours w/normal restbreaks."  Tr. 144.

The ALJ gave great weight to these opinions other than the finding that Mr. Yirgu could perform complex and detailed tasks, as that finding conflicted with the medical record.  Tr. 28. At issue is whether the ALJ erred when he failed to consider that aspect of the medical consultants' opinions that Mr. Yirgu's depression and sleep issues "may affect his CPP at times." Tr. 127.

The Commissioner argues the ALJ accounted for the depression and sleep issues because he cited to the exact language at issue.  Dkt. 12, p. 4 (citing Tr. 21) ("John D. Gilbert[…] opined that although the claimant's depression and sleep issues related to nightmares may affect his concentration, persistence, and pace at times, these are improved and he can carry out simple, routine tasks and most complex, detailed tasks.").  However, while the ALJ repeated the doctor's language in describing his findings, the limitations set forth in the language are not contained in the ALJ's residual functional capacity ("RFC") assessment, and the RFC assessment thus does not account for any such limitations in concentration persistence, or pace.  The Court accordingly rejects the Commissioner's rationale.

Mr. Yirgu argues the ALJ's failure to account for this limitation is significant because the limitations were not considered by the Vocational Expert ("VE") in determining Mr. Yirgu's

RFC and available jobs. For example, the table worker job (DOT 739.687-182) identified by the VE, which requires examination and removal of defective felt-based linoleum material passing along a conveyor, would not be available to an employee who missed 15% of the defective items. Further, the VE agreed that if an employee missed two days of work per month due to illness or who is off task 20% of the time, they would be unlikely to retain employment. Thus, assessing the quality and nature of Mr. Yirgu's depression and sleep issues is necessary because it is must be determined whether he could perform this or any other job if his concentration, pace and persistence may be affected by his mental health problems.

The ambiguity in the doctor's opinion that Mr. Yirgu's "depression and sleep issues related to nightmares *may* affect his CPP at times, although these are improved," requires clarification through further development of the record. Although two doctors opined Mr. Yigu's condition may affect his CPP, neither elaborated sufficiently to conclude whether or not Mr. Yirgu is capable of maintaining the concentration, pace, and persistence to perform simple, routine tasks at the level required to engage in gainful work activity. Without further clarification, no reasonable factfinder could conclude that based upon Dr. Gilbert's opinions, Mr. Yirgu has the CPP to perform gainful work activity as the ALJ found. Accordingly, on remand, the ALJ should further develop the record to clarify the opinions of Drs. Gilbert and Covell.

**B.      New Evidence Presented to the Appeals Council: Dr. Rowlett's Second Statement**

Mr. Yirgu contends that remand for further proceedings is necessary to consider Dr. Rowlett's September 8, 2016 report, which was submitted to the Appeals Council. Dkt. 11, at 13-16. As previously noted, in this report, Dr. Rowlett clarifies Mr. Yirgu's limitations (major depressive disorder and PTSD) absent the use of drugs or alcohol. Tr. 1044-1048. The Commissioner argues this evidence provides no basis for remand as it was considered by the

Appeals Council and does not undermine the substantial evidence on which the ALJ's decision rests.  Dkt. 12, at 2 (citing *Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157, 1162-63 (courts consider the entire administrative record, including any evidence considered by the Appeals Council, "in determining whether the Commissioner's decision is supported by substantial evidence.").

The Commissioner's argument fails because Dr. Rowlett's September 2016 report clearly undermines the ALJ's determination.  As discussed above, the ALJ rejected Dr. Rowlett's opinion based upon the erroneous assumption that Dr. Rowlett treated Mr. Yirgu solely for drug and alcohol dependency issues when the record reflects Dr. Rowlett had in fact been treating Mr. Yirgu for some time for other psychologically based symptoms.  The new evidence puts the nail in the coffin and makes crystal clear the ALJ's assessment of Dr. Rowlett's opinion is incorrect.

## CONCLUSION

For the reasons above, the Court recommends the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reassess the opinions of Dr. Rowlett, Dr. Dees, and Dr. Gilbert.  The ALJ shall clarify Dr. Gilbert's opinions by expanding and further developing the record.  As appropriate, the ALJ shall reassess Mr. Yirgu's RFC, and proceed to steps four and five.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **September 27, 2017**.  If no objections are filed, the Clerk shall note the matter for **October 2, 2017,** as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with

the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

DATED this <u>13th</u> day of September, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge